IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| OAKLEY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 21 C 536 |
| | ) | |
| THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A," | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

It has become commonplace in this district for holders of trademark and trade dress rights to file suits naming dozens or even hundreds of claimed infringers and counterfeiters, alleging that they are selling knock-off products via the Internet. The plaintiffs seek an injunction and recovery of damages. In these lawsuits, the actual identities and locations of the sellers are unknown to the trademark holder because they have used assumed names. The lawsuits are typically filed against a group of sellers whose assumed names are listed on an attachment to the complaint, usually called "Schedule A."

In these lawsuits, the plaintiff typically requests permission to file "Schedule A" and other information that would identify the sellers under seal, to avoid tipping off the defendants that a lawsuit has been filed. Public filing, the plaintiff contends, would result in the defendants hiding or transferring ill-gotten gains and destroying relevant evidence.

Once the lawsuit is filed, the plaintiff typically moves *ex parte* for entry of a temporary restraining order that, among other things, bars further infringing sales and freezes any assets held in the defendants' PayPal or similar accounts. The plaintiff also typically moves for permission to serve the defendants with summons via e-mail, as their addresses are unknown and often hidden, and they are typically based overseas.

Once the court enters a TRO, the plaintiff serves it along with the complaint on the defendants via e-mail; serves PayPal and other similar entities with the TRO to freeze the defendants' assets; and takes other steps to effectuate the TRO's terms. Due to the limited duration of a TRO, the plaintiff then seeks entry of a preliminary injunction with similar terms that will carry through to the conclusion of the case. Most cases of this type are concluded relatively quickly, after the plaintiff negotiates settlements with the defendants who make contact with the plaintiff's attorney and obtains default judgments against those who do not respond.

The present case is similar, but it is a patent infringement suit, not a trademark infringement suit. The plaintiff, Oakley, Inc., alleges that each of the "Schedule A" defendants is selling products that infringe a design patent issued to Oakley for a particular eyewear design. The infringement allegations are rather conclusory. Among other things, these allegations include no information about the nature of the claimed infringing products or how they are claimed to infringe the design patent. And none of the allegations says anything specific about any defendant; all of the defendants are lumped together.

Without addressing at this point the sufficiency of the complaint under Federal Rules of Civil Procedure 8(a) and 12(b)(6) as to each of the sixty defendants, there is a

2

threshold problem with this particular case that does not exist in the typical "Schedule A" trademark/trade dress case. Specifically, the joinder of all the defendants in a single suit appears to run afoul of a provision of the America Invents Act, adopted in 2013. Before the AIA, it was common for patent holders (not just *design* patent holders like Oakley) to sue or attempt to sue multiple infringers in a single suit. The AIA sought to put a stop to this. Under 35 U.S.C. § 299, parties that are accused infringers of a patent may be joined in a single action as defendants only if a right to relief "is asserted against the parties jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" that involve making, using, importing, offering, or selling "the same accused product or process," *id.* § 299(a)(1), and only if there are questions of fact common to all defendants that will arise. *Id.* § 299(a)(2). Importantly, "accused infringers may not be joined in one action as defendants . . . based solely on allegations that they each have infringed the patent or patents in suit." *Id.* § 299(b).

In this case, Oakley does not appear to clear the hurdles imposed by section 299. It alleges that that the defendants all sold infringing products, but that is not enough in light of section 299(b). Oakley also makes a conclusory allegation, "on information and belief," that the defendants are "interrelated" and "working in active concert." Compl. ¶ 21. But there is no apparent explanation of the basis for Oakley's "information and belief"; a claim that they have engaged in similar or parallel conduct is not enough. It is difficult to see how this unsupported allegation is sufficient to satisfy the "same transaction, occurrence, or series of transactions or occurrences" requirement of section 299(a)(1), given Congress's express determination in section

3

299(b) that an allegation of infringement by multiple entities is not enough to allow joining all of them in one lawsuit. In addition, Oakley does not allege or explain how questions of fact common to all of the defendants will arise in the case, as required by section 299(a)(2).

Finally, Oakley does not allege that the defendants are selling *the same* accused product. This is a separate requirement of section 299(a)(1) that Oakley does not appear to satisfy or even address, even if it could legitimately contend that the defendants' conduct is part of the same series of transactions or occurrences and that fact questions common to all defendants will arise.

The Court notes that section 299(c) provides that an accused infringer may waive, for itself, section 299's limitations. But the Court is not inclined to allow a lawsuit that appears on its face to run afoul of a Congressional enactment to proceed on the possibility that the defendants may eventually waive the application of the statute. A "shoot first and ask questions later" approach does not seem to the Court to be appropriate here, particularly given the manner in which lawsuits of this type typically proceed, with under-seal filing, *ex parte* temporary restraining orders, asset freezes, and the like.

Plaintiff's motion to file under seal is granted, but plaintiff is ordered to show cause in writing by February 5, 2021 why the case should not be dismissed under 35 U.S.C. § 299.

Date: January 30, 2021

_____
MATTHEW F. KENNELLY
United States District Judge

4